# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-20-00382-CV

**Dennis Alan Eichhorn, Appellant**

**v.**

**Sarah Eichhorn, Appellee**

FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-FM-19-002120, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

I concur with the Court's resolution of most of the issues presented in this appeal, including its conclusions about the improper calculation of the amount of the reimbursement to the community estate for the California house and the insufficient evidence to support characterizing the March 2011 $65,000 deposit, which was part of the funds used to purchase the Texas house, as Sarah's separate property. However, for the reasons explained below, I dissent from the Court's conclusion that the evidence was insufficient to support confirming any separate-property interest in Sarah's favor in the Texas house.

I diverge from the Court's analysis in part because I do not believe the Court is holding Dennis to the proper standard of review on appeal. Although I agree that the Court has correctly stated the standard of review, including our consideration of the legal and factual sufficiency of the evidence as relevant factors when determining whether the trial court abused its discretion in dividing the marital property, *see Zeifman v. Michels*, 212 S.W.3d 582, 587-88

(Tex. App.—Austin 2006, pet. denied), I do not believe the Court is correctly applying the legal-sufficiency standard, and therefore I disagree with the Court's sustaining of Dennis's third issue and its conclusion that the trial court lacked legally sufficient evidence to exercise its discretion to confirm any separate-property interest in Sarah's favor in the Texas house. While I agree with the Court that the trial court lacked legally sufficient evidence upon which to base its characterization of the $65,000 deposit as Sarah's separate property, I would conclude that the evidence is legally sufficient to support its conclusion that $147,647.80 is Sarah's separate property.

Because I would apply the standard of review differently than the Court has, I will restate the applicable standard to emphasize those portions that I believe are key to a correct analysis in this case. The Court correctly states that in family-law cases, to determine whether the trial court has abused its discretion, we engage in a two-pronged inquiry, determining whether (1) the trial court had sufficient evidence upon which to exercise its discretion and (2) the trial court erred in its application of that discretion. *See id.* at 588. We apply the traditional standards for legal- and factual-sufficiency review when considering the first question. *Id.* However, when we review an alleged characterization error, we must determine whether the trial court's finding of separate property is supported by clear-and-convincing evidence, and thus we apply an elevated standard of review for sufficiency. *See, e.g.*, *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004) ("[W]henever the standard of proof at trial is elevated [to require clear-and-convincing proof], the standard of appellate review must likewise be elevated."); *Prague v. Prague*, 190 S.W.3d 31, 38 (Tex. App.—Dallas 2005, pet. denied) (explaining that review of alleged characterization error requires appellate court to first determine whether trial court's

separate-property finding is supported by clear-and-convincing evidence, and if not, whether that error caused trial court to abuse its discretion).

In this case, it is important to note that Dennis is challenging on appeal an issue for which he did not have the burden of proof at trial—whether the trial court correctly characterized the 70.88% of the funds Sarah used to purchase the Texas house as Sarah's separate property. Accordingly, while Sarah had the burden at trial to show by clear-and-convincing evidence that the funds at issue were separate property, on appeal, Dennis must show that no legally sufficient evidence supports the trial court's finding.[1]  *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)); *see also Garza*, 164 S.W.3d at 627 (Tex. 2004).  "Evidence is legally sufficient if it 'would enable reasonable and fair-minded people to reach the verdict under review.'"  *Emerald Oil*, 348 S.W.3d at 215 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

"'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code § 101.007; *see also Prague*, 190 S.W.3d at 36 (citing *In re J.F.C.*, 96 S.W.3d 256, 267 (Tex. 2002)).  The standard is an intermediate one, requiring more proof than the preponderance standard applicable in ordinary civil proceedings and less proof than the reasonable-doubt standard applicable in criminal proceedings. *In re G. M.*, 596 S.W.2d 846, 847 (Tex. 1980).  While the proof must weigh more heavily than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed.  *State*

---

[1]  Dennis does not challenge the factual sufficiency of the evidence supporting the trial court's separate-property finding.

3

*v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam); *see also In re Marriage of Everse*, 440 S.W.3d 749, 751 (Tex. App.—Amarillo 2013, no pet.).

A court conducting a no-evidence review in a case requiring clear-and-convincing proof at trial follows this procedure:

> [The] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, *looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.* A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.
>
> If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient.

*Garza*, 164 S.W.3d at 627 (quoting *In re J.F.C.*, 96 S.W.3d at 266) (emphasis added).

I would also emphasize that in a bench trial, because the trial court acts as the factfinder, it is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Thus, "the trial court may consider all the facts and circumstances in connection with the testimony of each witness and accept or reject all or part of that testimony." *Hailey v. Hailey*, 176 S.W.3d 374, 382 (Tex. App.— Houston [1st Dist.] 2004, no pet.). This Court may not substitute its judgment for the trial court's assessment of witnesses' testimony in a bench trial. *Id.* The trial court does not abuse its discretion if it bases its decision on conflicting evidence or when evidence of a probative or substantive

4

character exists to support the decision. *Zeifman*, 212 S.W.3d at 587. "The mere fact that a trial court decided an issue in a manner differently than an appellate court would under similar circumstances does not establish an abuse of discretion." *Id.*

The Court's opinion sets forth the evidence before the trial court about the funds that Sarah contended were separate property that she later used to purchase the Texas house. That evidence includes her testimony, her tracing expert's testimony, and documentary evidence that shows the funds came from her Capital One bank accounts that she held before the marriage (when the accounts were with Capital One's predecessor-in-interest, ING). The earliest statement, dated March 2008, shows a balance of $87,652.35, followed by a statement showing a May 2008 transfer of $10,000 to her ING account from a different checking account. After she and Dennis married in September 2008, Sarah made two additional deposits—one in October 2008 for $15,000 and one in July 2010 for $36,000. The expert opined that out of those deposits $14,509.52 and $35,485.93, respectively, were Sarah's separate property. Dennis does not argue that this total amount of $147,647.80 was not separate property at its inception.

Instead, Dennis argues, and the Court agrees, that because Sarah was unable to obtain statements for the now-defunct ING bank accounts, the gap in the documentary evidence between the March 2008 ING statement and the first Capital One statement in January 2013 means that Sarah cannot trace by clear-and-convincing evidence those separate-property funds. To reach this conclusion, the Court relies on the fact that by the time of the first Capital One statement, the Capital One accounts contained nearly $36,000 more than what Sarah's other evidence accounts for, meaning that separate and community property were necessarily commingled in the Capital One accounts. I disagree with the Court's conclusion that the gap in documentary evidence alone means that the property has been "so commingled as to defy resegregation and identification."

5

*Ante* at _____ (quoting *Goyal v. Hora*, No. 03-19-00868-CV, 2021 WL 2149628, at \*6 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op.)).

Although the Court discounts Sarah's expert's testimony and his statement in his report that Sarah had informed him no withdrawals had been made from the ING accounts during this time, the trial court could properly consider this evidence. Moreover, Sarah's expert also testified that he had examined the tax returns ("Three years of tax returns. That's what we relied on.") and stated that he relied upon the fact that the interest balances had not varied much to conclude that the balance of funds in the accounts had stayed consistent.[2] In addition, the Capital One statements from January 2013 through November 2018 when the accounts were closed out show that no withdrawals had been made during that time period either. The record contains no evidence that contradicts the testimony or documentary evidence on this point.

A showing that community and separate funds were deposited in the same account does not divest the separate funds of their identity and conclusively establish the entire amount as community property, if the separate funds may be traced and the trial court is able to determine accurately the interest of each party. *In re Marriage of Everse*, 440 S.W.3d at 751 (citing *Holloway v. Holloway*, 671 S.W.2d 51, 60 (Tex. App.—Dallas 1983, writ dism'd)). In such cases, we presume the community funds are drawn out first, before separate funds are withdrawn, and where there are sufficient funds at all times to cover the separate-property balance in the account at the time of the divorce, we presume the balance remains separate property. *Id.* (citing *Smith v. Smith*, 22 S.W.3d 140, 146 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). In this case, the testimony was that no withdrawals were made from the accounts—much less withdrawals in an amount that

---

[2] The tax returns were admitted into evidence.

6

left a balance of less than $147,647.80—either during the time period for which statements are lacking or during the time period from January 2013 until the account was closed in November 2018. That testimony was supported by the interest amounts on the tax returns and the growth of the account.[3]

While we are to resolve any doubt as to the character of property in favor of community status, we also must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. The trial court, as the sole judge of credibility, considering all the facts and circumstances in connection with the testimony, could have reasonably formed a firm belief or conviction that the $147,647.80 is Sarah's separate property. Thus, looking at *all* the evidence in the light most favorable to the trial court's finding, under the

---

[3] The Court relies on several cases to support its conclusion that "[t]his Court and others have held that similar gaps in the documentary evidence meant that the evidence did not sufficiently trace purported separate-property character." However, the facts of this case are distinguishable from those cases. *See Goyal v. Hora*, No. 03-19-00868-CV, 2021 WL 2149628, at *9 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op.) (holding that husband did not adequately trace separate property when there was three-month gap in monthly brokerage account statements and brokerage account's value nearly doubled during this period and when he had not established that stock in brokerage account at time of divorce had been purchased with separate property); *In re Marriage of Everse*, 440 S.W.3d 749, 752 (Tex. App.—Amarillo 2013, no pet.) (holding that husband did not adequately trace separate property was attributable to retirement benefits accrued before marriage when there was 10-year gap in statements); *Boyd v. Boyd*, 131 S.W.3d 605, 613-17 (Tex. App.—Fort Worth 2004, no pet.) (holding husband did not adequately trace separate property that he asserted was used to make economic contribution to community estate when he produced no documentation to establish separate origin of funds used, instead relying only on his own uncorroborated testimony); *Bahr v. Kohr*, 980 S.W.2d 723, 729-30 (Tex. App.—San Antonio 1998, no pet.) (holding husband and wife who were defendants in fraudulent-transfer suit did not adequately trace proceeds from sale of property into wife's purportedly separate-property account when defendants provided no documentation showing date account was opened, account's beginning balance, or debits and credits to account, including deposit from sale proceeds). Here, the origin of the deposits as separate property is not disputed by Dennis and the tax returns and the growth of the accounts support the testimony that no withdrawals had been made from the accounts during the time period between the statement showing the premarital balance and the Capital One statements.

7

facts present here, I would conclude that the trial court had legally sufficient evidence to support a finding that Sarah adequately traced the source of the $147,647.80 and that it did not abuse its discretion to the extent that it determined that amount was separate property.

Accordingly, I would affirm the divorce decree's confirmation that $147,647.80 was Sarah's separate property used to purchase the Texas house, and I would reverse only that part of the divorce decree that included the $65,000 deposit as Sarah's separate property used to purchase the Texas house. Thus, I dissent from that portion of the Court's opinion and judgment sustaining Dennis's third issue to the extent the Court holds that Sarah failed to confirm any separate-property interest in the Texas house and reverses that part of the decree.[4] I concur with the remainder of the Court's opinion and judgment.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justice Triana and Justice Kelly

Filed: May 20, 2022

---

**4** In addition to awarding 70.88% ownership of the Texas house to Sarah's separate-property estate, the trial court also awarded the remaining community-property ownership interest in the house to Sarah. On remand, the trial court will retain its discretion to make a new division of the property and to make a disproportionate division if it determines such a division is just and right. *See Kramer v. Kastleman*, 508 S.W.3d 211, 216 (Tex. 2017) ("This, of course, is always the case when remand is required based on a material error affecting the trial court's just-and-right property division; a party could always get more, less, or different.").